Our next case on the call of the docket is Agenda Number 12, Case Number 115-342, Spanish Court Two Condominium Association Appellant versus Lisa Carlson, F. Lee. Counsel for the appellant, please proceed. Diane Silverberg Chief Justice Kilbride, members of the Illinois Supreme Court, and counsel, good morning. My name is Diane Silverberg and I represent the Spanish Court Two Condominium Association in this matter. If it pleases the court. The second district, in rendering its decision in the Spanish Court Two matter, acknowledged in its decision that by allowing unit owners to claim an offset to their assessments based on a purported breach of covenants to repair and maintain the common elements, it was placing itself in the small minority of jurisdictions around this country that so allow such a remedy. There is a reason that courts from California to New York, from Texas and Georgia up to Michigan disagree with this decision. And the reason for that is that condominiums live and breathe through their assessments. Without them, the financial integrity of the institution and the ownership rights of all of the unit owners within the building are imperiled. Only by failing to acknowledge the distinctions between a multi-unit apartment building on the one hand and condominium associations on the other, was the second district able to say that an alleged breach of covenants may be raised as a germane defense in a forcible entry and detainer proceeding. However, a lease is not the equivalent of a declaration. And a board of directors is not the equivalent of a landlord. And assessments are not the equivalent of rent. As a matter of statute, and as a matter of policy that supports the statute, such fundamental distinctions between these two forms of residency compel the conclusion that the second district's decision must be reversed, absent that the state of condominium associations in Illinois will be thrown into a state of chaos. If we rule in your favor and the association fails to adequately maintain the common elements, what remedy does a unit owner have? Thank you, Justice. The condominium owner at all times, despite relinquishing certain rights by virtue of buying into an association, retains the right to bring a lawsuit. And in fact, the second district in this case, taking allegations that were in the affirmative defenses that were identical to those set forth in the counterclaim, agreed with the trial court judge, who in ruling on a motion to sever and to strike, severed the counterclaim and is allowing it to proceed to this day in another courtroom in Lake County. Thus, a unit owner is not deprived of an opportunity to protest the conditions of his or her unit. They may bring a lawsuit just like any property owner in this State. They simply, I would submit, are not permitted to do so in the context of a forcible entry and detainer proceeding, which this Court has found is to be a summary proceeding and may only serve defenses that are germane to the issue of that proceeding, namely of possession. What affirmative defenses would be germane to a forcible entry and detainer in a condo situation? Certainly. The courts of this jurisdiction have established four very distinctive types of defenses that can be raised in the context of a forcible entry and detainer proceeding. All of them, if I may summarize them, really are issues going to did you really pay? Did somebody fail to account for your payment? Is the agreement that creates the obligation to pay somehow flawed? That is not, as we have here, a substantive determination that, unlike a question that may be presented in a landlord tenant dispute, such as under Jack Spring, you know, is this a suitable environment for somebody to live in, in the condominium setting, we're dealing with the application of the business judgment rule. And so we're opening up, if we were to permit defenses of the sort that there were in Jack Spring and which the Second District said can be extended into condominium settings here, we would be opening up what is to be a summary proceeding into an enormous evaluation of every kind of issue that would be presented in a situation where fiduciary obligations are involved. Ms. Silverberg, are you making primarily then a public policy argument that in a condominium association, all the unit owners, if one doesn't pay an assessment, it hurts the rest of the unit owners? I understand that's your position. Certainly. And whether that technically involves the possession as to that one unit owner, are you saying it's the greater good of public policy for that reason, or are you specifically saying that not paying of the assessment does not go to possession in any way, shape, or form? Well, there are certain specified bases under which a unit owner can at least defend the question of whether or not there is possession. In the specific context of condominium associations, yes, it's a matter of policy, but those policies are embodied within the statute that we have, the Illinois Condominium Property Act. And the Condominium Property Act, in a variety of sections, makes clear that the duty to pay assessments is absolute. And most primarily, I would submit that it is 18Q of the Act, which has the language that a unit owner may not assign, delegate, transfer, surrender, or in any way avoid the duties and responsibilities of ownership as a unit owner, and any such attempts are void. Now, the second district, in its decision in this case, really, in my humble estimation, turned that on its head, and it said by not identifying assessments here, what the legislature was really intending was that you can find an excuse for not paying assessments. And I would submit that other courts in this country who have evaluated language that is very similar to what we have in 18Q have concluded that that is not an appropriate interpretation. And in particular, I would point this Court to a case that was cited in my brief, the Forest Villas case out of Georgia. And in there, there, the Court was evaluating a statute that was very similar to 18Q. And the Court concluded that such language was plain and susceptible to only one meaning, and that one meaning is that there is no legal justification for withholding assessments, and that such language is a clear demonstration or a clear choice by the legislature that an owner's obligations to pay are absolute and they can't exert leverage in their own private disputes by withholding assessments, but rather they need to pick a different Yes, Justice. The four defenses that you mentioned, the fourth is improper motivation by the plaintiff in bringing the lawsuit. Yes. Doesn't it open up a lot of avenues? Couldn't improper motivation by the condominium association in bringing these lawsuits be a basis? Well, certainly that is an established defense in the context of the Forcible Entry and Detainer Act. But I would submit that inherent in that exception is the understanding that you still have a duty to pay. It's just that the motivation is creating some We have a tenant that's a problem to management. And the way to encourage that tenant to leave is to fail to repair the heap in that apartment. Would that be the kind of motivation we're talking about that would allow a set-off? I don't think that that's the kind of motivation that is at issue here. I think that traditionally the sort of motivations that have been considered are ones involving race, where there is some sort of prejudice that's involved by the board and they're trying to get out a certain category of owner within the association. I do not believe that that subsection of or the established defense to Forcible Entry and Detainer actions properly would include the sort of defense that I understand, Justice  Well, there's no situation that you can envision even health hazards that would permit this. Certainly. And there is nothing that would prevent a unit owner from bringing these claims to the attention of whatever authorities or bringing it as a separate lawsuit. The question here is, if we are to allow the Forcible Entry and Detainer Act to continue to be used as a summary proceeding because there has been a policy or an understanding that assessments and rent or assessments are necessary From a practical standpoint, what would the tenant have to do if he should take the road of filing a lawsuit to establish these claims? Isn't a time factor there very important to be considered? You're asking about a tenant in an apartment? Yes. Or in a condominium. Oh, in a condominium. I mean, a unit owner in a condominium association can raise issues with if there is some sort of code violation, certainly they could raise that. They could bring an injunction action. Certainly the courts of this State are filled with situations where unit owners will bring a claim The Forcible Entry and Detainer is sort of a summary action that can be disposed of fairly in a short period of time. If we require the tenant to go to another court, then we're tied into a whole new timeframe for seeking some kind of redress. Potentially, although in a court of equity, in the chancery courts of this State, certainly the courts recognize that there are certain situations that require expedition. And thus, a unit owner could bring a claim and often does bring a claim for injunctive relief and can obtain in fairly rapid order the sort of injunctive relief that may be necessary in order to protect their interests in the case. The appellate court here, though, has seemed to limit it to situations in which the unit is uninhabitable. Right? And so as far as forcefuls being summary proceedings, I mean, the only time, it seems under the reasoning of the appellate court here, the only time that it would be allowed is in a situation where the condo was uninhabitable. Well, I think my reading of the decision, if I may, is that the court talks about breaches of covenants. And one of the critical distinctions between an apartment complex on the one hand, which has a lease that covers the very narrow issues that we're dealing with a whole panoply of issues. And I think that permitting or allowing a unit owner to make a unilateral determination about whether there was uninhabitability opens the floodgates to some very critical issues that will quickly, I think, consume the Forceful Entry and Detainer Act. Notably, in this case, there were no findings made that the unit was uninhabitable. This was simply an allegation that was alleged by the unit owner in her complaint. So there has been no determination made. And I think that that is the proper determination to be made in a separate court, where the court has the opportunity to evaluate the type of issues that would be raised in the fiduciary context that is the condominium association. In an apartment complex scenario, you are dealing with contractual rights at arm's length. In the condominium setting, the duties of the board of directors, which is comprised of fellow volunteer unit owners, is protected by the business judgment rule, because their decisions are sound in fiduciary duties. So when you have to do an analysis to determine, is a unit uninhabitable, necessarily you're going to be looking at things that pertain to, what did the board know? What did they do? It is not inconceivable in the condominium setting that you may have a damaged unit, but no breach by the association. And what's critical in that regard is the condominium's rights and duties are interpreted under the veil of fiduciary obligations. And if we are to allow those kinds of analyses to be heard in the context of a forcible entry and detainer action, we could well end up with a situation where the analysis takes several years, as it has in the companion case to this lawsuit that is the severed counterclaim. Now, what I think is interesting is the second district agreed that the counterclaim with allegations that are identical to the affirmative defenses properly were severed and to be heard in a separate courtroom. Yet, we have affirmative defenses with the exact same allegations that the second district says properly should be heard in the context of the forcible entry and detainer proceeding. What are we to make of that? Are we going to have a risk of inconsistent verdicts? I think so. And if the counterclaim's allegations have taken several years to come to trial, given the nature of the inquiry... Is that a fair representation, though, of the appellate court's decision here? Because I believe they said whether the defendant is entitled to monetary compensation for damage, which is what the counterclaim was all about, didn't have to do with the right to possess. Whether or not the money was received didn't have to do with the right to possess. And that's why it couldn't properly be brought in a forcible entry and detainer action. Well, the two affirmative defenses in this matter and the counterclaim all have exactly the same allegations until you get to the very last paragraph. The one of the affirmative defenses entitled breach of covenants in essence is seeking some sort of estoppel to claim that you're entitled to clearly they're seeking some sort of monetary equivalence or determination. And then the counterclaim, while not denominated as a particular type of action, seeks monetary damages. My point is that the analysis necessary in order to construe the allegations of each of those, of the affirmative defenses, as well as the counterclaim, is going to be identical. At the end of the day, whether the counterclaim is seeking money or the affirmative defenses are seeking money in the form of a set-off, the analysis that must be conducted is the same. And it is simply materially different than what you would have in an analysis that is undertaken in the context of a landlord-tenant dispute. There, you're looking at a circumscribed period of time. What is the duration of the lease? And the purpose of the lease is for providing a roof over your head and an inhabitable space. In fact, that decision in Jack Spring has not been extended to commercial rental situations. And I would submit that the differences between the residential and commercial setting are far less than the differences between apartment buildings and condominium associations. In an apartment complex, all that the tenant has is her possession. And the owner, an owner of a condominium association has a whole variety of rights. They can run for the board. They can petition to have non-performing board members removed. They can look at the budget. In fact, the statute requires that they have an opportunity to examine the budget and to comment on the budget. If they feel that there's insufficient attention being paid to a particular problem in the building, they can comment on it. They can attend board meetings. None of these rights are available to a tenant. So it makes a degree of sense, a high degree of sense, to have certain protections available to a tenant in a landlord-tenant setting that are not available to an owner in a condominium setting. Courts around the country have had an opportunity under their own condominium acts to consider the policies that are behind these acts. Courts, and in this instance I'm quoting from the Prosser case out of Massachusetts, have noted that a system that would tolerate a unit owner's refusal to pay an assessment, even a single assessment, would undermine the financial integrity of the fight of the entire association. And that is because an association's sole method of funding the many things that an association and its board must do is through assessments. The Forcible Entry and Detainer Act gives the Condo Association a fairly powerful remedy, I take it. If this were a lawsuit by the Condo Owners Association seeking to recover the assessment, simply a suit for monetary amounts owed, would the condominium owner, the individual, have the right to present the affirmative defenses or a counter claim in that suit? No. In a situation such as you have described, there are only four established defenses that can be raised. Now this question And that's aside from the Forcible Entry and Detainer Act. It doesn't matter where or what type of action is filed, is that correct? If the action is filed outside of the Forcible Entry and Detainer Act, certainly a condominium owner has a right to raise whatever defenses may be available to him or her. That's my question. Yes. It could be raised if this were a suit just for the assessment fees as opposed to seeking to recover possession of the property. Certainly. If in the event that the association were to decide that it wishes just to bring a garden variety breach of contract claim, any of the defenses would be available. It is because of the specific wording of the Forcible Entry and Detainer Act that limits defenses to issues that are peculiar to that statute that the unit owner is restricted in the context of a proceeding brought under that statute. Thank you and I'll look forward to further comment. Good morning. My name is Norman Larum. I represent Lisa Carlson. May it please the Court. The issue presented in this case as to whether or not the affirmative defense of breach of contract on the part of the association is viable defense under the Forcible Entry and Detainer Act has already been resolved by this Court in two different cases. The Rosewood Corporation v. Fisher case and the Jack Spring v. Little Sutton and Peterson case. Both cases are dispositive of the issue here and this Court in both cases defined the term germane as it appears in the Forcible Entry and Detainer Act as being closely, as meaning closely allied to, related to. In the Jack Spring case, of course, it involved a landlord action against a tenant and the tenant raised the affirmative defense of breach of an express warranty in the lease of failure to repair as well as an implied warranty defense. And this Court held that both affirmative defenses were germane under the Forcible Entry and Detainer Act. Do you see no difference, Counsel, between the landlord-tenant setting and the condo situation? I don't because a lease is a contract just as the controlling document of a condominium is a contract. The declaration of a condominium is a contract, as the appellate court referred to several different authorities. I referred to several different authorities. Every appellate court that has addressed this issue has held that the declarations constitute a contract, the bylaws constitute a contract. Contract principles apply to contracts no matter what the subject matter. And even though certain statutes like landlord-tenant ordinances or landlord-tenant statutes may modify the relationship between the parties in a given area, but the analysis Is it a contract between that owner and every other owner in the condo association as well? I do not believe that the declaration of condominium is a contract between that owner and every other owner. Don't their interests rise and fall together? The other owners are certainly members of the association, but under the statute of the Illinois Condominium Property Act, the statute basically provides for condominiums, and condominiums are a creature of statute, by enabling an association to contract with each unit member. And the contract, I know this argument was raised in the reply brief, and I don't believe it's correct, the contract is between each unit member and the association as an entity. Even though other owners are members of the association, they are not contracting parties. It's the association that's the contracting party. What about the fact that the condo owner can participate in the management of the association? Well, that is true. The condo owner can participate, but the condo owner is helpless when it comes to certainly a condo owner can run for the board, but the condo owner, until that condo owner gets on the board, doesn't make decisions. And as in this case, if there's water seeping through the unit for years and the board willfully refuses to do anything about it, my client, the condo owner, is helpless, doesn't have a say, can't repair the roof, can't repair the exterior brickwork. Can't participate in any decision, especially if she is shut out of that process. So when... What do you mean shut out of the process? Well, if she's not allowed to participate in that process or her voice isn't even heard, because that can happen. Are you saying contractually she is or practically? Practically. Practically. So, yes, there is a theoretical right to participate, but when it comes to maintaining and repairing common elements, the unit owner is powerless, without authority. Isn't that the concept of condominium, that the unit owners collectively, not as individuals, maintain the common areas? The concept is... whether large or small, that would defeat the purpose of it, isn't it? That is true, but that seems to me to be a problem with the management of that particular condominium board rather than a problem with the law. I don't believe the law should change to protect a dysfunctional board or a board that is not responsible or not disciplined enough to attend to its problems. The result that Spanish court seeks here really promotes an incentive not to repair common elements. It promotes an incentive for an association not to fulfill its obligations to maintain and repair common elements properly. And if these issues, to answer Justice Freeman's question, if these issues aren't brought quickly and in a forcible entry and detainer action, what's the alternative for the unit owner? The alternative is a two- or three- or four-year battle. How long did your client have the water problem? Since August of 07. Why didn't they bring an action in August of 07? Well, from a practice... Since they're worried about the timing, it seems to me that they didn't bring anything, including their affirmative offenses, until there was the forcible file. Well, I can tell you, I can give you the answer. My client is not a person of means, and at the time she was involved as a plaintiff in a personal injury action against the association arising from a defective elevator. She tried to resolve this informally through the management company. She had them in her unit. I'm looking at the water damage. There were photographs taken. We tried this case in August. There might be all types of extenuating circumstances, counsel, but my question is in direct response to your answer to Justice Freeman's question about the filing another action. In fact, indeed, there is another remedy in this case, correct? Right. And the same question... And that's in the circuit court of Lake County right now. That's correct. That's correct, Judge. And she did pursue that, but she waited for two years, over two years, to try to resolve this problem as it got worse and worse and worse. She could not sell her unit because the water damage kept getting worse and worse. She is not a person who wants to go to court, believe me. And it's expensive to do this. It's expensive to hire the experts. It's expensive to go through the discovery disputes, which happened in this case. There were discovery sanctions by the trial judge, entered by the trial judge. It is a process as a matter of public policy that unit owners should not have to go through if there is another way to resolve this. And a quick way to resolve it is to raise it as an affirmative defense in either an action for money damages or in a forcible entry detainer action to force the issue and get it resolved. But getting back to your question, and I think this is an important question, the contract here, as the appellate court pointed out, is between the association and the unit owner. The defense was breach of contract, not breach of fiduciary duty, not the business judgment rule. Those concepts come into play when the individual board members are involved in litigation. This was a straight breach of contract affirmative defense that the association couldn't and didn't have the right to possession because they couldn't enforce a contract that they had already breached. They had been in breach for over two years. And my client at the time she stopped paying was ready to prove that because she had already lined up her ducks with a contractor and knew exactly what the problem was. And so these questions as to whether or not she should be divested of her fee simple ownership in an FED action because the association willfully refuses to It shouldn't be treated any differently than any other contractual relationship between two parties. And there's no public policy reason. You asked the question about public policy. I think the essential issue here is that we have a condominium association and maybe a condominium industry, a property management industry that's asking this contract principles should apply. If somebody breaches, they're not entitled to enforce. If somebody breaches, the other party has the right to assert that as an affirmative defense in a money action or an action for possession. Illinois is the only state in the union that allows an FED action in the hands of an association which does not have fee simple, which does not own fee simple, which didn't pay the taxes, which didn't pay the mortgage, which doesn't pay the utilities, which hasn't kept the upkeep on the inside. And it is a draconian remedy. And my point is if the association is going to be Dracula, then it's got to have clean hands. It has to be in compliance with its duties under the declaration, which is a contract. The case law from the other jurisdictions really don't apply here. And I know this Court has heard cases about public policy from other jurisdictions because condominiums are creatures of statute. And all those other states, number one, don't have the remedy of forcible entry and detainer in the hands of an association. And number two, have completely different statutes. So these decisions really relate back to statutes. And what's our public policy here? This Court has said over and over again, we look to the Constitution, we look to statutes, we look to established case law. There is nothing in the Illinois public policy that favors an exception for condominium associations in this context. Nothing. And as a matter of fact, the public policy goes the other way. Is it your position that only when it's an uninhabitable situation that it can be brought? Quite frankly, I don't believe that the appellate court went that far. What the appellate court said was that the breach on the part of the association must be material. It must be a material breach, which is the same for any contract. A party who says you can't enforce the contract, that affirmative defense is based on a material breach. It can't be frivolous. And I think this whole thing about the chaos and the financial instability is patently ridiculous because there are too many practical pressures on unit owners. Number one, it's expensive. Number two, it's risky. Number three, there's a fee-shifting provision in the Condominium Act that shifts the fees back to the unit owner if the unit owner's position is frivolous or the unit owner loses. Not too many unit owners are going to take a frivolous position knowing that they could be saddled with a big attorney's fee award. There are too many deterrents under the statute and the declarations against a frivolous position. And my client, I can tell you, did not take a frivolous position because we But what I want to say about public policy to address your question is that unlike the Knowles case where this court upheld the FED action as a remedy, unlike that case, the interest here went to the Illinois legislature, proposed an amendment that would reverse the appellate court, and that amendment basically to the was this affirmative defense is no longer an affirmative defense. And the Illinois legislature considered that, considered the appellate court opinion here, and turned it down three times. There is the public policy. There is your statement of public policy from the Illinois legislature who considered this issue and, unlike Knowles, reversed it and clarified that the Homestead exemption would not be a defense to an FED action. In this case, the same tactic was used. An amendment was proposed to the legislature, and the House turned it down three times. What would have happened, counsel, if the appellate court had done exactly what it did with the counterclaim, separated out, but it agreed with the condo board on the affirmative defenses and had thrown those out? Would the forcible have been stayed while you proceeded on the counterclaim, or how would that have worked? I'm sorry, Judge. I'm wondering what would have happened if the court had not allowed or the court had not allowed the affirmative defenses and it separated out the counterclaim saying this isn't proper here, just what the appellate court did here. What would have happened? Would the forcible have been stayed until you proceeded on your counterclaim? I think that the result would have been an affirmance of the trial court where my client would have been forced to pay the assessments while she pursued her remedy in a separate action. In other words, the eviction would have gone ahead unless she, as she did, she paid her assessments, she paid the legal fees, she posted a bond, and she complied with the trial court order. It's possible that the appellate court could have crafted a remedy and said, okay, we're going to put this on hold while you try to damage this case. The reason I ask the question is one of the issues, and it was raised by opposing counsel, is that the forcible call in and of itself to have other issues that are going to have to be decided in that court, and with the amount of forcibles that we have today, is that practical? I think it is practical. I think it's practical because the only issue is breach of contract. It's not breach of fiduciary duty. It's not the business judgment rule. The individuals generally are not involved, and if they're involved, they shouldn't be parties because the individuals don't bring the action for possession. The individual board members do not bring that action. It's brought in the name of the association as the contracting party. And here, in this case, there was a breach of contract count by the association because under the Condominium Act, the association is enabled to contract not only with third persons but also with each individual unit owner. So the only issue is whether or not the association breached this contract in a material way which would preclude the association from gaining possession. Well, that's going to require proof, though. It's going to require some proof. A day, maybe two days of proofs. And this Court, in both Jack Spring and Rosewood Corporation, held that certain affirmative defenses should be tried. In Rosewood, it involved equitable defenses of unconscionability, civil rights, breach of civil rights. In Jack Spring, it was a breach of an express agreement. How long does it take to try that? It doesn't take that long. It takes maybe a couple days to try that issue. And that's it. And I might add, in terms of, you know, inconsistent results, once the two parties litigate that issue, it's res judicata. It's res judicata for anything else. And if the association wins and the association walks away, we didn't breach the contract, then that's a big result for the association in a damage case, because that might preclude litigation in a damage case. So it really promotes a faster, more expeditious resolution of these issues rather than prolong it. But from a policy standpoint, and I know I've got a couple minutes, this result, the result asked for by Spanish court is contrary to public policy. It's not supported by public policy. It's contrary. Illinois law and policy promotes mutuality of obligation, not mutual exclusivity, where one party has to perform and another doesn't. Illinois public policy promotes performance of contractual obligations, not providing a disincentive to associations. This situation shouldn't be treated any differently than any other contract. And there is nothing in our statutes, there is nothing in the Constitution, there's nothing in our case law that says otherwise. Where do we draw the line then? What next party will come into court and say, well, our promise is mutually exclusive to that guy's promise? Contract law is the bedrock of much of what we do, most of what we do. It's fair, it's balanced, and it should be applied in a balanced way here. Thank you very much. I ask the court affirm the Second District's opinion. I think it's correct, and I think it promotes Illinois public policy. Thank you. Rebuttal. Thank you. And just briefly, and I don't wish to belabor this point, but I do think it's inappropriate for there to be an introduction of matters that are outside the record here. And certainly for counsel to represent to this court that he has proven his case when there has been no verdict rendered is inappropriate. In answer to earlier questions that were raised by this Justice, absolutely the declaration is for the benefit of all condominium unit owners. It is with all condominium unit owners. The Condominium Property Act in Section 9.2, when it notes that the association has available to it as a remedy, speaks in terms of the remedy of the Forcible Entry and Detainer Act being available for the benefit of all other unit owners. It could not be more clear. The association does pay for utilities and other such things. That is the purpose, among many others, for the assessments in this matter. And that is one of the key distinctions to be drawn between a landlord-tenant scenario. There is no dollar-for-dollar exchange between the rent that's paid and the space that is provided. In the context of a condominium association, the obligations of the Board of Directors and the association are many, and the assessments go to pay all of those things. So when a unit owner engages in self-help and withholds assessments, they are necessarily withholding necessary funds not only for the very repairs that they claim are necessary, but also for other necessary functioning of the association. One of the things that I think is very important, and this was discussed in the Puser decision, there can be damage without there being a breach. In the Puser case, as here, there was a unit owner who contended that there were leaks from the roof into their unit. And what the court noted is that there can be damage without a breach in the condominium of the in the context of a condominium association, because the analysis turns on the reasonableness of the actions that are taken by the board. Counsel also spoke about the fact that this dispute should be treated no differently than a garden variety contract. And I would submit that under the coach-run condo case that we cited in our brief, that is absolutely not the case. We have a statute, and the statute must govern this dispute, and indeed it provides that to the extent that the declaration has provisions that are in conflict with the condo, the condo prevails, or excuse me, the Condominium Property Act prevails. There is no incentive for unit owners in a condominium association who sit on the board not to make repairs. They are investors in their units. And when an association building suffers by reputation from claims that the building is not doing what it needs to, everybody suffers in the form of their investments in the building. Counsel also spoke of the draconian remedy of the Forceful Entry and Detainer Act, and that it divests ownership of a condominium owner, and that it's not true. In the Forceful Entry and Detainer context, it is strictly possession. There is the small matter of fees that counsel touched upon, not so small at this point, because all the other unit owners in the building have had to cover the fees of this dispute, and as the Condominium Property Act mentions, as well as the declaration, where there has been a default by a unit owner, and the unit owner here admits that she did not pay her assessments, the fees that are incurred by the association are properly charged against the unit owner. The various courts around the country whose decisions I have cited in my brief talk about the fact that even if a defense by a unit owner is meritorious, it cannot be permitted to jeopardize the functioning of the entire association. And this goes back again to the fact that declarations are a contract in common with your fellow unit owners, by which you are co-tenants in all the common elements. It is for these reasons that I would submit that the Second District's decision in Spanish Part 2 must be reversed insofar as it allowed the affirmative defenses that are the subject of this appeal, and I thank you all for the opportunity to present my arguments to you. Thank you. Case number 115342, Spanish Court 2, Condominium Association, Appellant v. Lisa Carlson. Appellee is taken under advisement as agenda number 12, Mr. Marshall. The LA Supreme Court stands in recess until 1110 a.m.